# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BACK INSTITUTE a/s/o J.R.,<br><br>    Plaintiff/Counterclaim<br>    Defendant,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD INSURANCE COMPANY; ABC CORP. (1-10)(Said names being fictitious and unknown entities)<br><br>    Defendant/<br>    Counterclaim Plaintiff. | CIVIL ACTION NO.: 12-4985 |

## DEFENDANT/COUNTERCLAIM PLAINTIFF HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Connell Foley LLP
*Attorneys for Defendant/Counterclaim Plaintiff*
*Horizon Blue Cross Blue Shield of New Jersey*
Liberty View
457 Haddonfield Road, Suite 230
Cherry Hill, NJ 08002
(856) 317-7100

*Of Counsel*:
Edward S. Wardell, Esq.


*On the Brief*:
Matthew A. Baker, Esq.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 5

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 6

    A.  The Parties ............................................................................................. 6

    B.  NJ Back's Claim for Benefit Payments ................................................... 6

    C.  Horizon's Proper Benefit Determination Under the Terms of J.R.'s
       Health Benefit Plan .............................................................................. 8

    D.  Horizon's Applicable Medical Policies .................................................. 12

    E.  Horizon's Counterclaim to Recover the Payment Made in Error ................. 13

LEGAL ARGUMENT ............................................................................................. 14

    A.  The Summary Judgment Standard ........................................................ 14

    B.  ERISA Completely and Expressly Preempts NJ Back's State Law Claims ......... 14

    C.  Horizon Processed the Claims Based Upon the Clear Terms Contained in the
       Applicable Health Benefit Plan ............................................................. 16

    D.  Horizon's Determination of UCR was not Arbitrary and Capricious ............... 17

    E.  Horizon is Authorized to Recover the Payment Made on the Experimental and
       Investigational Services at Issue ........................................................... 19

    F.  Horizon is Entitled to Attorney's Fees and Costs under ERISA .................... 20

CONCLUSION ...................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004) ........................................................15

Celotex Corp. v. Catrelt, 477 US 317 (1986) ...............................................................14

City of Orange Twp. V. Empire Mortg. Services, Inc., 341 N.J. Super. 216 (App. Div. 2001) ...16

Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522 (3d Cir. 2009) ....................17

FMC Corp. v. Holliday, 498 U.S. 52 (1990) ................................................................15

Gambino v. Anrouk, 232 Fed. Appx. 140 (3d Cir. 2007) ............................................17

Howley v. Mellon Fin. Corp., 625 F.3d 788 (3d Cir. 2010)..........................................18

Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553 (App. Div. 2007)...................16, 17

James v. Federal Ins. Co., 5 N.J. 21 (N.J. 1950) .........................................................16

Kelso v. General American Life Ins. Co., 967 F.2d 388, 390 (10th Cir. 1992) ............16

Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266 (3d Cir. 2006)..............18

McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172 (D.N.J. 1996) .................14

McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618 (3d Cir. 2004) ....................17

McPherson v. Employees' Pension Plan of Am. Re-Insurance Co.,
    33 F.3d 253 (3d Cir. 1994) ....................................................................................20

Metz v. United Counties Bancorp., 61 F.Supp.2d 364 (D.N.J. 1999)...........................16

Moats v. United Mine Workers of American Health and Retirement Funds,
    981 F.2d 685 (3d Cir. 1992) ..................................................................................18

Pilot Life Ins. Co. v. Deadeaux, 481 U.S. 41 (1987).....................................................15

Pryzbowski v. U.S. Healthcare, 245 F.3d 266 (3d Cir. 2001)..................................14, 15

Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010) ...............17, 18

## TABLE OF AUTHORITIES - CONTINUED

**Other Authorities**

29 U.S.C. § 1001 et seq ..................................................................................................5

N.J.S.A. 17:48E-1 to -48 ...............................................................................................6

2943758-01

## INTRODUCTION

Plaintiff/Counterclaim Defendant New Jersey Back Institute ("NJ Back") brought this action against Defendant/Counterclaim Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), as the alleged assignee of J.R.., to recover benefits for services rendered to J.R. on or about March 26, 2009.  Horizon counterclaims because it is entitled under the term of J.R.'s benefit plan and the Health Claims Authorization, Processing and Payment Act, ("HCAPPA"), N.J.S.A. §17B:27-44.2(d)(10), to recoup the payments erroneously made for the experimental and investigational procedures rendered by NJ Back to J.R., which are not covered under the applicable ERISA-governed health benefit plan.

J.R. received health benefits through an employee health benefit plan sponsored by Home Care Industries, Inc. which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Plaintiff performed a laminectomy on J.R. on or about March 26, 2009.  Horizon initially denied benefits for the procedures at issue because it found, under the terms of the plan, that the services rendered were "experimental and investigational" and therefore excluded from coverage.  After a representative of NJ Back contacted Horizon, threatening to file an action, Horizon erroneously changed its benefit determination.  Horizon then reimbursed the procedures at the allowed amount as determined by Horizon under the terms of the applicable ERISA-governed health benefit plan.  Unsatisfied with this erroneous payment, Plaintiff NJ Back filed suit to recover an even higher reimbursement for the procedures which should not have been paid in the first place.  Horizon now moves for summary judgment because NJ Back's claims are pre-empted by ERISA and because NJ Back cannot show that Horizon was "arbitrary and capricious" in determining the amount of payment made mistakenly under the plan.  Furthermore, under HCAPPA, Horizon moves for summary

5

judgment on its counterclaim on the basis that it is authorized to recoup the erroneous payment previously made.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    The Parties

Horizon is a not-for-profit health service corporation established under the Health Service Corporation Act, N.J.S.A. 17:48E-1 to -48, and is authorized to transact business in the State of New Jersey, with its principal place of business located at Three Penn Plaza, Newark, New Jersey. (Notice of Removal, ¶ 3). Horizon, among other things, provides health benefits and administers benefits for participants and beneficiaries of employee health benefit plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (Notice of Removal, ¶ 3).

New Jersey Back Institute ("NJ Back") is a physician's office that specializes in the treatment of spinal injuries, having its office located at 15-01 Broadway, Fair Lawn, NJ 07140. (Complaint, ¶ 1). NJ Back brings this action as the alleged assignee of J.R. (Complaint, ¶ 4). J.R. was a participant in an employee health benefit plan established by his employer, Home Care Industries, Inc., and insured by Horizon. (NOR, ¶ 1).

### B.    NJ Back's Claim for Benefit Payments

NJ Back filed a Complaint against Horizon seeking increased reimbursement for services purportedly rendered to J.R. on March 26, 2009. NJ Back submitted charges in the amount of $49,500 for a laminectomy. (Complaint, ¶ 9). Horizon initially denied payment on the claim, on the basis that the services were "experimental and investigational." (Certification of Catherine Benitez, ¶ 15).

After NJ Back contacted Horizon, threatening to file a complaint, Horizon changed its initial determination and allowed $18,308, and paid reimbursement of $12,669 to NJ Back.

(Complaint, ¶ 9). The explanation of benefits form provided by Horizon indicated that the member was responsible for coinsurance in the amount of $4,000 and a deductible in the amount of $1,639 and the subscriber responsibility totaled $36,831. (Complaint ¶ 9).

NJ Back contends that it is entitled to a higher payment on the claim, even though no payment was due at all under the terms of the plan. According to NJ Back, it is entitled to "the usual and customary fee, often referred to as the 'reasonable and customary' fee, is defined, or is reasonably interpreted to mean, the amount that providers like the Plaintiffs, normally charge to their patients in the free market, i.e. without an agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers." (Complaint, ¶ 7). NJ Back further contends that "the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience. (Complaint, ¶ 7). NJ Back is now seeking increased reimbursement for these services in the amount of $36,831[1]. (Complaint ¶ 10). The complaint fails to claim any violation of ERISA and NJ Back instead brings various state law claims for breach of contract, promissory estoppel and negligent misrepresentation based on Horizon's denial of benefits. (Complaint Counts I through IV).

---

[1] It is clear from the face of the Complaint that the NJ Back has waived any and all patient responsibility associated with the claims at issue. As NJ Back has not attempted to obtain either the deductible or the coinsurance from J.R., and is arguing that somehow this amount is in dispute, it is clear that patient responsibility in this instance has been waived.

**C.     Horizon's Proper Benefit Determination Under the Terms of J.R.'s Health Benefit Plan**

**1.     J.R.'s Health Benefit Plan**

J.R. received health benefits through his employer, Home Care Industries, Inc., under an employee benefit plan governed by ERISA (the "Plan"). (Benitez Cert., ¶ 4The Plan excludes from coverage, and will not pay for, those services considered "experimental and investigational." (Benitez Cert., ¶ 6). Experimental or investigational means any treatment or service which "as determined by Horizon BCBSNJ, fails to meet any one of these tests:"

a.     …. [omitted]

b.     There must be sufficient proof, published in peer-reviewed scientific literature, that confirms the effectiveness of the Technology.  That proof must consist of well-designed and well-documented investigations.  But, if such proof is not sufficient or is questionable, Horizon BCBSNJ may consider opinions about and evaluations of the Technology from appropriate specialty advisory committees and/or specialty consultants.

c.     The technology must result in measurable improvement in health outcomes, and the therapeutic benefits must outweigh the risks, as shown in scientific studies.   "Improvement" means progress toward a normal or functional state of health.

d.     The technology must be as safe and effective as any established modality.  (If an alternative to the Technology is not available, Horizon BCBSNJ may, to determine the safety and effectiveness of a Technology, consider opinions about and evaluations of the Technology from appropriate specialty advisory committees and/or specialty consultants.)

e.     The technology must demonstrate effectiveness when applied outside of the investigative research setting.

(Benitez Cert., ¶ 7).

Furthermore, the Plan excludes from coverage "any part of a charge that exceeds the Allowance." (Benitez Cert., ¶ 8).  The Plan defines allowance for an out-of-network provider as:

8

> an amount determined for the service or supply based on (i) profiles compiled by Horizon BCBS based on the usual and prevailing payments made to providers for similar services or supplies in specific geographical areas; or (ii) similar profiles compiled by outside vendors[2].

(Benitez Cert., ¶ 9). The Plan further explicitly states that "Services and supplies provided by an Out-of-Network Provider, are covered at the Out-of-Network level." (Benitez Cert., ¶ 10). The schedule of covered services and supplies show that Horizon reimburses out-of-network providers at 70% of covered charges. (Benitez Cert., ¶ 11). The Plan notes that the member "may be responsible for paying charges which exceed our Allowance, when services are rendered by an Out-of-Network Provider." (Benitez Cert., ¶ 12).

The Plan also excludes from coverage any service "for which a covered person is not legally obligated to pay." (Benitez Cert., ¶ 13). Under the Plan, absent an agreement or contractual obligation, if a Horizon member is not obligated to pay for the services, the services are barred from coverage under the terms of the Plan.

## 2.   Horizon Initial Proper Denial of Benefits

NJ Back seeks to recover benefits for services rendered to J.R. on March 26, 2009. (Benitez Cert., ¶ 14). Horizon initially denied reimbursement for the claims at issue on the basis that "procedure code 63056(62) and 63057(62) are not eligible for separate payment. It was determined that these procedure codes are investigational based on Horizon Blue Cross Blue Shield of NJ's medical policy – Treatment 077. Therefore since your claim was processed correctly, no additional payment will be made." (Benitez Cert., ¶ 15).

---

[2] The Plan sponsor, Home Care Industries, Inc., made certain elections in connection with enrollment of the group. One of these elections was what database would be used to calculate the "Allowance" to be paid to out-of-network providers. Home Care Industries, Inc. selected the 70th percentile of HIAA. (Benitez Cert., Exhibit "A" Group Enrollment Form).

### 3. Horizon Mistakenly Paid the Claims Originally Denied as Experimental and Investigational

Dissatisfied with Horizon's benefit determination, a representative of NJ Back called Horizon and threatened to file a complaint on the basis that J.R.'s no-fault/PIP benefits had been exhausted. (Benitez Cert., ¶ 16). On the basis of this threat and the coordination of benefits departments' mistaken belief that Horizon was responsible for the claim, Horizon erroneously overturned its original, correct determination and reprocessed the claim. (Benitez Cert., ¶ 17).

On or about January 18, 2012, Horizon reprocessed the claim at issue. Horizon allowed an amount $18,308, and made payment of $12,699 under the terms of the applicable health benefit plan. (Benitez Cert., ¶ 18). This payment was made in error, because the exhaustion of J.R.'s no-fault/PIP benefits does not supersede Horizon's medical plan guidelines. (Benitez Cert., ¶ 19). Under both the Plan and Horizon medical policy 077, the initial denial of benefits on the basis that the procedure was "experimental and investigational" was correct. (Benitez Cert., ¶ 20).

### 4. Horizon Properly Determined NJ Backs Appeals for the Amount of Reimbursement Paid Under the Plan

Dissatisfied with the amount of payment made on the claim, which was made in error, NJ Back submitted an appeal to Horizon on or about February 7, 2012 disputing Horizon's reimbursement for the services at issue. (Benitez Cert., ¶ 21). NJ Back's appeal simply stated:

> According to Ingenix Customized Fee Analyzer, this claim should be reimbursed in the 95th area, since Ingenix fees are greater we are expecting the remainder of the balance billed. Therefore we should be reimbursed for the underpaid amount, which is the difference between our billed amount and the approved amount. Please remit the total reimbursements warranted $31,192.00 plus accrued interest as allowed by law. Enclosed is a copy of the Operative report and Patient's Assignment of Benefits and Primary explanation of benefits attached.

(Benitez Cert., ¶ 22).

Horizon responded to this appeal on or about February 23, 2012.  (Benitez Cert., ¶ 23).

Horizon noted that the allowed amount of the claim was properly calculated under the applicable

health benefit plan.  Specifically, Horizon's response provided:

> When eligible services are performed by an Out-of-Network physician who does not participate with Horizon BCBSNJ Managed Care Network, payment will be made at the 70th percentile of the Health Insurance Association of America (HIAA) allowable amount.  Therefore no additional payment will be issued on this claim.

(Benitez Cert., ¶ 24).  Horizon also provided NJ Back with the procedures for filing an external

MAXIMUS appeal through the New Jersey Department of Banking and Insurance.  (Id.)

NJ Back submitted a second level appeal to Horizon on or about March 8, 2012.  (Benitez

Cert., ¶ 25).  This second level appeal disputed Horizon's determination and response to the first

level appeal.  Specifically, NJ Back argued that reimbursement was not made in accordance with

70% of HIAA, stating "our office feels we were not paid based on the 70th percentile, below you

will find a table that reflects an out of network provider fee schedule for the 60th percentile[3].

You will notice what was paid is much less than the percentiles stated in your letter."  NJ Back

then demanded additional reimbursement in the amount of $36,831.  (Benitez Cert., ¶ 26).

Horizon responded to this additional appeal on or about March 31, 2012.  Horizon again

reiterated its reimbursement methodology for out-of-network services rendered under the

applicable health benefit plan.  (Benitez Cert., ¶ 27).  Horizon's response provided, in pertinent

part:

> When eligible services are performed by an out of network physician who does not participate with Horizon BCBSNJ Managed Care Network, payment will be reimbursed at the 70th percentile of the Health Insurance Association of America (HIAA)

---

[3] NJ Back's analysis is misplaced and its fails to advance any evidence why they should be entitled to reimbursement at 95% of Ingenix.

allowable amount.   Therefore, no additional payment will be issued on this claim.

(Id.)

In neither appeal did NJ Back explain its basis for its charges or argue that J.R. agreed to the charges for the services at issue.  By their own admission, NJ Back admits that it did not have an agreement with J.R. for payment of the claims at issue or the amount to be charged. (Statement of Facts, ¶ 35).  Furthermore, by their own admission, NJ Back admits that it does not maintain either a charge master or price list on which it bases it charges. (Statement of Facts, ¶ 36).

### D.    Horizon's Applicable Medical Policies

Horizon, in its role as an insurer and administrator, publishes medical policies to assist in administering health benefits.  Horizon's medical policies are available to all members and providers, and provide general information applicable to the administration of health benefits that Horizon insures or administers[4].  Horizon's medical policies have been developed by Horizon's medical policy committee consistent with generally accepted standards of medical practice, and reflect Horizon's view of what services are deemed to be medically necessary or experimental and investigational in nature.  (Benitez Cert., ¶ 28).

Horizon publishes a specific policy pertaining to discectomies.  Horizon Medical Policy #077 states that "laser **discectomy** and DISC nucleoplasty are considered *investigational* as techniques of disc decompression and treatment of associated pain."   (Benitez Cert., ¶ 29)(emphasis in original.).   Medical Policy #077 explains what specific procedures are

---

[4] Horizon's medical policies are available to the general public via https://services5.horizon-bcbsnj.com/eprise/main/horizon/tsnj/tsweb/Medical_Policies_Guidelines.html#medical_policies.  Both general information pertaining to these policies, as well as the policies themselves are available at this webpage.

considered experimental and investigational under this policy and explains the rationale for Horizon's position. Medical Policy #077 cites over 45 references to support its position. (Id.).

**E.     Horizon's Counterclaim to Recover the Payment Made in Error**

Horizon filed a counterclaim in this matter, seeking to recover the payment erroneously made on this claim. (Benitez Cert., ¶ 30)(Answer & Counterclaim).  The Plan is clear that "if Horizon BCBS NJ pays anyone who is not entitled to benefits under the Program, Horizon BCBSNJ has the right to recover those payments." (Benitez Cert., ¶ 31).  Under the terms of the Plan, Horizon's initial benefit determination was correct as the services rendered were properly determined to be "experimental and investigational." (Benitez Cert., ¶ 32).  Despite NJ Back's threats to file a complaint, exhaustion of PIP benefits does not supersede Horizon's medical policies.  Therefore, the payment subsequently made on the claim was erroneous and NJ Back is not entitled to benefits for the services rendered.  (Benitez Cert., ¶ 33).  Payment was made on or about January 18, 2012, and Horizon is authorized to recover the payment anytime before July 18, 2013.  On August 31, 2012, Horizon timely filed its Counterclaim to recap the overpayment.

## LEGAL ARGUMENT

**A.      The Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  Although a Court must view the evidence in the light most favorable to the non-moving party, Rule 56(c) requires the entry of summary judgment against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case.  See McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172, 1179-80 (D.N.J. 1996).  When, as in this case, the Defendant shows "that there is an absence of evidence to support [the plaintiff's] case," the plaintiff must produce sufficient evidence to support its claims.  Celotex Corp. v. Catrett, 477 US 316 (1986); See McCall v. Metropolitan Life Ins. Co., 956 F.Supp. at 1172, 1180 (D.N.J. 1996).

**B.      ERISA Completely and Expressly Preempts NJ Back's State Law Claims**

NJ Backs' state law claims arising from Horizon's denial of benefits fail as a matter of law because they are preempted by ERISA.  ERISA contains two statutory provisions which preempt state law causes of action.  The first of ERISA's two preemption provisions, Section 502(a) of ERISA, 29 U.S.C. §1132(a), sets forth a comprehensive civil enforcement scheme which forecloses state law claims that seek to supplement or supplant its remedies.  Any claim that falls within the scope of Section 502(a) is completely preempted.  Pryzbowski v. U.S. Healthcare, 245 F.3d 266, 271-72 (3d Cir. 2001).

In order to maintain the integrity of its exclusive regulatory scheme, ERISA also contains an express preemption clause.  Section 514(a) of ERISA, 29 U.S.C. §1144(a), preempts "any and all state laws" that "relate to any employee benefit plan."  Although not without limits, the Supreme Court has repeatedly found that the express preemption provisions of Section 514(a) of

ERISA are deliberately expansive. <u>Pilot Life Ins. Co. v. Deadeaux</u>, 481 U.S. 41, 46 (1987). "[ERISA's] pre-emption clause is conspicuous for its breadth. It establishes an area of federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 58 (1990).

As NJ Back did not plead any violations of ERISA and instead only brought state law claims, this action is pre-empted and Horizon is entitled to summary judgment as a matter of law.

**1.      Section 502(a) of ERISA Completely Preempts NJ Back's State Law Claims**

Section 502(a) of ERISA completely preempts NJ Backs' state law claims against Defendants because it improperly seeks to duplicate and supplement the exclusive remedies available under ERISA. Under Section 502(a), "any state law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." <u>Davila</u>, 542 U.S. at 209. For this reason, any claim that "challenges the administration of or eligibility for benefits" is completely preempted and must be dismissed." <u>Pryzbowski</u>, 425 F.3d at 273.

In this case, NJ Backs' state law claims for breach of contract, promissory estoppel, negligent misrepresentation and unjust enrichment are based on the allegation that Defendants failed to pay benefits for the services rendered to J.R. Because these state law claims seek to recover benefits allegedly due enter the ERISA-governed employee health benefit plan, they are completely preempted. <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200, 209 (2004).

**2.      Section 514(a) of ERISA Expressly Preempts NJ Back's State Law Claims**

Section 514(a) of ERISA, 29 U.S.C. §1144(a), expressly preempts any state law that relates to an employee benefit plan. One primary purpose of this provision is to eliminate the risk of conflicting and inconsistent state regulation of employee benefit plans. <u>Metz v. United</u>

Counties Bancorp., 61 F.Supp.2d 364, 381(D.N.J. 1999). For this reason, courts have repeatedly

held that Section 514(a) preempts state law claims that an insurer misrepresented the amount or

availability of benefits under an employee benefit plan. See, e.g. Metz, 61 F.Supp.2d at 381;

Kelso v. General American Life Ins. Co., 967 F.2d 388, 390-91 (10th Cir. 1992). Because NJ

Backs' claims are based on the alleged denial of payment of benefits under the plan, they once

again involve the administration of benefits and relate to the Plan. Indeed, NJ Back's claims

pose the precise risk of inconsistent state regulation that Section 514(a) is designed to prevent. If

claims like those pleaded by the NJ Backs are allowed to stand, a provider could bring a state

court action for damages any time a benefit plan denied coverage or reduced benefits because the

services were not otherwise covered under the terms of a plan.

### C.   Horizon Processed the Claims Based Upon the Clear Terms Contained in the Applicable Health Benefit Plan

It is long settled that when an insurance contract is clear, the court must give full effect to

the terms and enforce it as is. James v. Federal Ins. Co., 5 N.J. 21, 24 (N.J. 1950). When the

terms of a contract are clear and unambiguous there is no room for interpretation or construction

of the language and the court must enforce the contract as written. Impink ex rel. Baldi v.

Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007). The court may not "rewrite the contract

merely because one might conclude that it might well have been functionally desirable to draft it

differently." City of Orange Twp. V. Empire Mortg. Services, Inc., 341 N.J. Super. 216, 224

(App. Div. 2001)(citations omitted). Nor may the court revise a contract to reflect an agreement

it deems more desirable or alter it for the benefit of one party at the expense of the other party.

Id.

Under the Plan, coverage is excluded for any service "for which a covered person is not

legally obligated to pay." Horizon also determines what procedures are "experimental and

2943758-01

investigational." The Plan clearly excludes from coverage those services deemed "experimental or investigational." The Plan also defines the benefit level for services rendered by out-of-network providers.

It is therefore evident, that the terms of the applicable health benefit plans are clear and, as such pursuant to Impink ex rel. Baldi, the Court must enforce the contracts as written. The Plan explicitly excludes from coverage those services "for which a covered person is not legally obligated to pay." The Plan clearly gives Horizon discretion to make benefit determinations, including which services are "experimental or investigational." The Plan also specifically excludes from coverage those services determined, by Horizon, to be "experimental and investigational." The evidence is clear that Horizon member J.R. is not legally obligated to pay for the services at issue. It is also undisputed that Horizon properly processed the claims at issue pursuant to the terms of the applicable health benefit plans, and therefore is entitled to summary judgment as a matter of law.

**D.    Horizon's Determination of UCR was not Arbitrary and Capricious**

"Courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions … should apply a deferential abuse of discretion standard of review across the board[.]" Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Under this standard, courts may only overturn a plan administrator's denial of coverage if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Gambino v. Anrouk, 232 Fed. Appx. 140, 145 (3d Cir. 2007)(quoting McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004)). Where the claim administrator's actions were based upon the clear language of the policy, the actions were not "arbitrary or capricious" as a matter of law and the court must defer to the Claim Administrator. Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010)(Pisano, J.) Furthermore, "[t]he Court may not substitute

its own judgment as to the interpretation of the plan where this heightened standard is deemed appropriate." Id. at *4-5 (citing Moats v. United Mine Workers of American Health and Retirement Funds, 981 F.2d 685, 687-88 (3d Cir. 1992)).

A court reviewing an ERISA plan administrator's coverage decision must look only to the evidence before the administrator at the time the decision was made. Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010); Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266, 269 (3d Cir. 2006). Only the materials considered by the administrator are relevant to the analysis of whether the decision rendered was or was not "arbitrary and capricious." Howley, 625 F.3d at 793.

In this case, a review of the administrative record illustrates that Horizon properly calculated the allowable amount in accordance with the clear terms of the applicable health benefit plan. In submitting their appeals to Horizon, NJ Back relied on conclusory statements that Horizon underpaid the claims at issue. NJ Back attempted to argue that the Ingenix database was controlling and determinative of UCR; however, this was clearly contradicted by the clear terms of the applicable plan language. In neither appeal does NJ Back attempt to explain why Ingenix should be construed as controlling or determinative of what the allowance is[5]. This is because NJ Back does not have either a charge master or price list on which its charges are based and had no agreement with Horizon member J.R. about how much the services at issue would cost. As such, Horizon could not be expected to do anything but affirm its calculation of UCR at 70% of HIAA, the "allowance" mandated by the Plan. Clearly, NJ Back has failed to establish that Horizon acted in an "arbitrary and capricious" matter in making its benefit determination.

---

[5] On its face, NJ Back's appeal is fatally flawed. NJ Back contends it should be paid at the 95th percentile of Ingenix. However, the "usual, customary and reasonable" amount of the charge would instead correspond to the 50th percentile, not the highest amount.

18

Therefore, Horizon is entitled to summary judgment as a matter of law with respect to NJ Back's Complaint.

### E.   Horizon is Authorized to Recover the Payment Made on the Experimental and Investigational Services at Issue

Under both the terms of the Plan and HCAPPA, Horizon may recover the payment made to NJ Back.   Pursuant to the Health Claims Authorization, Processing and Payment Act (HCAPPA), Horizon is authorized to seek reimbursement for overpayment of a claim previously paid no later than eighteen (18) months after the date of the first payment on the claim was made. N.J.S.A. 17:27-44.2(d)(10).   As payment on the claim at issue was made on January 18, 2012, Horizon is timely authorized, by HCAPPA to recover the erroneous overpayment.   Furthermore, the Plan is clear that "if Horizon BCBS NJ pays anyone who is not entitled to benefits under the Program, Horizon BCBSNJ has the right to recover those payments."   Under the terms of the applicable health benefit plan, Horizon determines what services are "experimental and investigational."   The Plan is clear that services determined by Horizon to be "experimental and investigational" are excluded from coverage.

To recover a payment under HCAPPA, "at the time the reimbursement request is submitted to the health care provider, the payer shall provide written documentation that identifies the error made by the payer in the processing or payment of the claim that justifies the reimbursement request.   N.J.S.A. 17:27-44.2(d)(10).   The counterclaim filed by Horizon is written documentation which identifies the error made and satisfies the requirements to recover the payment under HCAPPA.   Both the Plan and Horizon medical policy 77 make it clear that Horizon excludes the "experimental and investigational" procedures at issue from coverage.   It is evident that Horizon is able to recover the payment made under HCAPPA.   Additionally, under the Plan, NJ Back was not entitled to benefits for the "experimental and investigational" services

at issue.   As such, Horizon is entitled to summary judgment as a matter of law on its counterclaim.

**F.      Horizon is Entitled to Attorney's Fees and Costs under ERISA**

ERISA allows a court to grant "reasonable attorney's fee[s] and costs of [an] action to either party." 29 U.S.C. 1132(g).   This statutory language grants a court hearing a claim governed by ERISA with discretion to award any party, including the insurer, its attorney's fees and costs. McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F.3d 253 (3d Cir. 1994). In exercising its discretion, the Court may considering the following five factors: (1) the offending parties culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. Id. at 254.

In this instance, Horizon is entitled to an award of attorneys' fees because NJ Back knew or should have known that it lacked any colorable basis in this matter.  NJ Back's position lacks any merit based on the underlying record.   NJ Back brought this action because it was dissatisfied with the reimbursement it received and had no legal or factual basis on which to rely. NJ Back is seeking increased reimbursement despite that fact that discovery shows that NJ Back does not even have a charge master or price list on which its charges are based.   It is therefore clear that NJ Back knew or should have known that this action was baseless and lacked any basis.   Additionally, NJ Back brought only state law claims and never sought to amend its complaint after removal.   As such, Horizon is entitled to an award of attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, Defendant/Counterclaim Plaintiff Horizon Blue Cross Blue Shield of New Jersey and respectfully requests that this Court grant summary judgment in its favor and dismiss New Jersey Back Institute's Complaint with prejudice, as well as grant Horizon grant summary judgment with respect to Horizon's Counterclaim to recap the payment previously made.

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Attorneys for Defendant/Counterclaim
Plaintiff Horizon Blue Cross Blue Shield of
New Jersey*

BY: _____
        Edward S. Wardell, Esquire
        Matthew A. Baker, Esquire

DATE:    July 16, 2013

2943758-01